**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

CRYSTAL HANNA NOWACZYK,

    Plaintiff,

v.                                                                        Case No.  5:21-cv-63-TKW/MJF

KILOLO KIJAKAZI,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Crystal Hanna Nowaczyk brings this action under 42 U.S.C. § 405(g) to seek review of a final adverse decision of the Commissioner of the Social Security Administration. Because the Commissioner did not apply the proper legal standards, the District Court should reverse the Commissioner's decision and remand this action for further proceedings.

**I. Procedural History**

On April 17, 2019, Plaintiff applied for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). In her applications, Plaintiff alleged that she became disabled on January 1, 2018. Tr. 26, 34, 197-98, 337-79.[1] The Social

---

[1] All references to "Tr." refer to the transcript of the Social Security Administration record filed on August 19, 2021. Doc. 10. The page numbers cited herein are those

Security Administration ("SSA") denied her claim initially and on reconsideration. On May 11, 2020, Plaintiff, represented by counsel, appeared and testified telephonically during a hearing before an Administrative Law Judge ("ALJ"). Tr. 34-60. On December 10, 2020, the ALJ issued a written decision in which she found that Plaintiff was not disabled. Tr. 26-41. The Appeals Council denied Plaintiff's request for review. Thus, the ALJ's decision stands as the final decision of the Commissioner, subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007). This appeal followed.

## II. FINDINGS OF THE ALJ

In denying Plaintiff's claim, the ALJ made the following findings:

1. Plaintiff met the insured-status requirements of the Social Security Act ("the Act") through March 31, 2018.

2. Plaintiff had not engaged in substantial gainful activity since January 1, 2018, the alleged disability-onset date;

3. Plaintiff had the following severe impairments: lumbar spondylosis, migraine headaches, depression, and anxiety. She had non-severe impairments of attention deficit hyperactivity disorder ("ADHD") and poly-drug abuse.

---

found on the bottom right corner of each page of the transcript, rather than the page numbers that were assigned by the court's electronic docketing system.

4. Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

5. Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except

> She can occasionally climb ramps or stairs. She can never climb ladders, ropes, or scaffolds. She can frequently balance and stoop. She can frequently bend at the waist required for sitting. She can occasionally bend at the waist from a standing position. She can occasionally kneel, crouch, or crawl. She can tolerate no more than moderate noise levels. She is able to understand, remember, and perform simple, unskilled work tests that do not exceed a reasoning level 2 as defined in the Dictionary of Occupational Titles. She is able to apply commonsense understanding to carry out simple one- or two-step instructions and deal with standard situations with occasional or no variable in or from these situations encountered on the job. She is able to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations. She can persist and maintain attention and concentration for two hour increments sufficiently enough to complete an eight-hour workday. She can tolerate occasional interaction with the public.

6. Plaintiff was unable to perform past work;

7. There are a significant number of jobs in the national economy that Plaintiff can perform; and

8. Plaintiff was not disabled, as defined in the Act, from January 1, 2018, through the date of the decision. Tr. 26-41.

### III. STANDARD

A court's review of the Commissioner's final decision is limited. A court may not "decide the facts anew, reweigh the evidence, or substitute its judgment for that of the [Commissioner]." *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Instead, a court reviews to ensure that the Commissioner's decision is supported by substantial evidence in the record and was a result of the application of proper legal standards. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If so, a court cannot disturb the Commissioner's decision. 42 U.S.C. § 405(g); *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The threshold for the evidentiary sufficiency in Social Security cases is not high. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Although substantial evidence is "more than a mere scintilla," it is not a preponderance; it requires only "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Id.*; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if it is supported by substantial evidence. *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

Pursuant to 20 C.F.R. §§ 404.1520(a)-(g) and 416.920(a)-(g),[2] the Commissioner analyzes a disability claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments or combination of impairments that meet or equal those listed in 20 C.F.R. Part 404, Appendix 1?

4. Does the individual have the RFC to perform work despite limitations and are there any impairments that prevent past relevant work?

5. Do the individual's impairments prevent other work?

The claimant bears the burden of establishing a severe impairment that keeps her from performing past relevant work. *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir. 1986); *see Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278 (11th Cir. 2020) ("A claimant bears the burden at the first four steps."). If the claimant establishes such an impairment, the burden shifts to the Commissioner at Step Five to show the existence of other jobs in the national economy that, given all of the claimant's impairments, the claimant can perform. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021). If the Commissioner carries this burden, the

---

[2] Generally, the same legal standards apply to claims for DIB and SSI, but separate parallel statutes and regulations exist for DIB and SSI claims. *See* 20 C.F.R. §§ 404, 416. Thus, citations of statutes or regulations found in quoted court decisions in this report and recommendation should be considered to refer to the appropriate parallel provision.

claimant then must prove that she cannot perform the work suggested by the Commissioner. *Goode*, 966 F.3d at 1279; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

### IV. PLAINTIFF'S MEDICAL HISTORY AND HEARING TESTIMONY

**A.    Relevant Medical History**

The undersigned summarizes only the medical history most directly relevant to the issues raised by Plaintiff. In January 2017 and February 2017, before the relevant period,[3] the Bay Arthritis Institute diagnosed Plaintiff as suffering from fibromyalgia and provided her with treatment.[4] Tr. 498-99, 511-12.

---

[3] A plaintiff pursuing a DIB claim must show that she was disabled between the alleged onset date of disability and the date last insured. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). In SSI cases, the plaintiff must show a disability between the date of the SSI application and the date of the ALJ's decision. *Id.* Because Plaintiff's disability onset date was January 1, 2018 and her last insured date was March 31, 2018, her DIB claim requires a showing of disability between January 1, 2018 and March 31, 2018. Additionally, because Plaintiff filed her applications on April 17, 2019, her SSI claim requires a showing of disability between that date and the date of the ALJ's decision on May 20, 2020.

[4] On examination, Plaintiff had 18 out of 18 tender points. "Fibromyalgia is characterized as pain in at least 11 of 18 specified tender points clustered around the neck, shoulder, chest, hip, knee, and elbow regions. The 18 trigger points associated with fibromyalgia are located across the neck, shoulders, chest, upper back, knees, hips, elbows, and buttocks." *Kendrick v. Astrue*, No. 8:09-CIV-522-T-17-EAJ, 2010 WL 883819, at *4 (M.D. Fla. Mar. 8, 2010) (internal citations omitted); *see Peters v. Astrue*, 232 F. App'x 866, 868 (11th Cir. 2007) (noting that checking for fibromyalgia is done "by examining eighteen 'trigger points'—points on the body of a person with fibromyalgia that exhibit soreness or experience pain when probed").

From September 23, 2016 through October 10, 2017, before the relevant period, Plaintiff received treatment at Florida Therapy Services, Inc., for her depression, generalized anxiety disorder, ADHD, and unspecified bipolar or related mood disorder. Tr. 553-71. In January 2017, Plaintiff was admitted to Life Management Center of Northwest Florida due to suicidal ideations. Tr. 797-801. Plaintiff was diagnosed with "Bipolar I disorder, Current or more recent episode depressed, Severe." Tr. 799. Plaintiff received treatment and was discharged.

On November 22 and December 11, 2017, Dr. Mccune diagnosed Plaintiff with lumbar spondylosis, lumbago, lumbar degenerative disc disease, lumbar radiculopathy, and fibromyalgia. Tr. 586, 592. On December 27, 2017, Dr. Mccune noted that Plaintiff had a history of fibromyalgia, and her active diagnosis was lumbar spondylosis and lower back pain. Tr. 576-77.

In April 2018, Plaintiff received treatment at Gulf Coast Medical Center for suicidal ideations, wrists lacerations, and aggression. Tr. 599, 622, 627. Plaintiff was tested for substance abuse, and she tested positive for cocaine, benzodiazepines, and cannabinoids. Tr. 625, 626. Medical staff noted that Plaintiff had a history of alcohol abuse, anxiety, bipolar disorder, and depression, and that she was noncompliant with medication. Tr. 622.

From March 18 through May 20, 2019, Plaintiff received treatment at Dynamic Pain and Wellness for treatment for chronic pain. Tr. 812-24. Plaintiff

reported that her pain was an 8/10. Plaintiff was diagnosed with lumbar spondylosis and fibromyalgia. Tr. 814, 818, 824.

In April 2019, Plaintiff applied for a "medical marijuana" card. She complained of lower back pain, muscle spasm, fibromyalgia, nausea, migraine headaches, fatigue, depression, and anxiety. Tr. 761. She noted that her symptoms from back pain, muscle spasms, migraines, and fibromyalgia were "not at all debilitating." Tr. 763, 764, 765, 766. Her nausea was "moderately debilitating," and she described her anxiety as "somewhat debilitating." Tr. 762, 765.

**B.     Summary of the Hearing Testimony**

In her application, Plaintiff alleged she was disabled due to her impairments of chronic back pain, major depressive disorder, anxiety, ADHD, fibromyalgia, and bipolar disorder. Tr. 379. At the reconsideration level, she reported increased anxiety, sleep disruption, and back pain. Tr. 423. In May 2020, Plaintiff alleged disability due to chronic back pain, lumbar spondylosis, bilateral sacroiliitis, lumbago, lumbar degenerative disc disease, lumbar radiculopathy, fibromyalgia, and anxiety. Tr. 472-73.

During the hearing, Plaintiff testified that she was unable to work due to pain and anxiety. Tr. 57. She reported having migraines every two or three days. Tr. 62. Plaintiff also stated that she cannot be around crowds of more than five unfamiliar

people. Tr. 57, 67. Her anxiety causes nausea, and she has depression. Plaintiff was not taking psychotropic medications for her anxiety or depression. Tr. 57-59.

## V. Discussion

**A.     Whether the ALJ Erred in Evaluating Plaintiff's Fibromyalgia**

Plaintiff asserts that the ALJ erred in finding that Plaintiff's fibromyalgia was not a medically determinable impairment. Doc. 26 at 28. Because of this, she argues that the ALJ's RFC determination failed to properly account for any limitations caused by Plaintiff's fibromyalgia. *Id.* The Commissioner argues that Plaintiff did not meet her burden of showing that fibromyalgia was an active impairment during the relevant period. Doc. 17 at 15-17. Additionally, the Commissioner argues that Plaintiff also failed to show that her fibromyalgia caused any additional work-related limitations. *Id.*

Fibromyalgia is a complex medical condition that "causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. Common symptoms . . . include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with the disease." *Davis v. Astrue*, 287 F. App'x 748, 762 (11th Cir. 2008) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 589-90 (9th Cir. 2004)); Social Security Ruling ("SSR") 12-2P, 2012 WL 3104869, at *2. Fibromyalgia "often lacks medical or laboratory signs" and "is generally

diagnosed mostly on an individual's described symptoms." *Moore*, 405 F.3d at 1211. Additionally, symptoms of fibromyalgia "can wax and wane so that a person may have bad days and good days." *Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 987 (11th Cir. 2015); *see Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 101 (4th Cir. 2020); *Revels v. Berryhill*, 874 F.3d 648, 657 (9th Cir. 2017). "For this reason, longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of fibromyalgia." *Laurey*, 632 F. App'x at 987; *Arakas*, 983 F.3d at 101.

When a plaintiff claims disability based on fibromyalgia, the ALJ must apply SSR 12-2p in evaluating the medical evidence regarding the plaintiff's fibromyalgia. *See Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (discussing SSR 12-2p and noting that SSRs are "binding on all components of the [SSA]"). SSR 12-2p provides guidance on how the SSA develops evidence to establish that a person has a medically determinable impairment of fibromyalgia and how the SSA evaluates fibromyalgia as part of a disability claim. *Id.*; SSR 12-2p, 2012 WL 3104869, at *1.

> [SSR 12-2p] sets out a two-step process for evaluating symptoms, which involves (1) determining whether medical signs and findings show that the person has a medically determinable impairment, and (2) once a medically determinable impairment is established, evaluating the "intensity and persistence of the person's pain or any other symptoms" and determining "the extent to which the symptoms limit the person's capacity for work."

*Sorter*, 773 F. App'x at 1073 (citing SSR 12-2p, 2012 WL 3104869).

Under the first step, SSR 12-2p requires an ALJ to find that fibromyalgia is a medically determinable impairment if the claimant presents evidence that: (1) she is diagnosed with fibromyalgia; (2) the diagnosis is not inconsistent with other evidence in the person's case record; and (3) the physician has provided some evidence described either by the 1990 American College of Rheumatology ("ACR") criteria or the 2010 ACR Preliminary Diagnostic criteria. SSR 12-2p, 2012 WL 3104869, at *2; *see Black v. Kijakazi*, No. 5:20-CV-01394-RDP, 2022 WL 803381, at *5 (N.D. Ala. Mar. 15, 2022) (noting that the ALJ must apply specific criteria that is "consistent with the 1990 [ACR] Criteria for the Classification of Fibromyalgia or the 2010 ACR Preliminary Diagnostic Criteria"); *Stevens v. Berryhill*, 404 F. Supp. 3d 933, 942 (M.D. Pa. 2019).

The 1990 ACR criteria requires: (1) a history of widespread pain; (2) at least 11 positive tender points on physical examination; and (3) evidence that other disorders which would cause the symptoms or signs were excluded. SSR 12-2p, 2012 WL 3104869, at *2.

The 2010 ACR Preliminary Diagnostic criteria requires: (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions; and (3) evidence that other disorders that could

cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded. *Id.*

In her decision, the ALJ acknowledged that Plaintiff's medical providers diagnosed Plaintiff with fibromyalgia during the relevant period. Tr. 36, 37, 814, 818, 824. At step two of the analysis, however, the ALJ did not address Plaintiff's fibromyalgia and did not reference SSR 12-2p. Tr. 29. The ALJ's written decision also does not include a discussion of Plaintiff's medical records and evidence—or lack thereof—that supported the ALJ's determination that Plaintiff's fibromyalgia was not a medically determinable impairment. *Id.* An "ALJ's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) (quoting *Ingram*, 496 F.3d at 1260). Here, because the ALJ failed to analyze Plaintiff's fibromyalgia under SSR 12-2p, the District Court cannot conclude that the ALJ engaged in a proper legal analysis that is supported by substantial evidence.[5]

---

[5] Because an ALJ is not required to consider conditions that are not medically determinable at subsequent steps of the analysis, "numerous courts have concluded that when a step-two-error stems from the ALJ's decision that an impairment is not medically determinable the harmless error doctrine is inapplicable." *Ann S. v. Kijakazi*, No. 2:20-CV-00841-JCB, 2022 WL 204596, at *5 & n.5 (D. Utah Jan. 24, 2022); *see Moore v. Saul*, No. 4:18-CV-01131-CLM, 2020 WL 1308404, at *5 (N.D. Ala. Mar. 19, 2020); *Diaz v. Comm'r of Soc. Sec.*, No. 18-CV-6224P, 2019 WL 2401593, at *5 (W.D.N.Y. June 7, 2019); *Brown v. Colvin*, 205 F. Supp. 3d 1269, 1275 (D. Kan. 2016); *Casselbury v. Colvin*, 90 F. Supp. 3d 81, 94 (W.D.N.Y 2015).

To overcome the ALJ's failure to address Plaintiff's fibromyalgia the Commissioner argues that Plaintiff "exhibited no positive trigger points in the head or neck . . . and the records do not mention positive trigger points anywhere else on her body after the alleged onset date." Doc. 17 at 16. This is a post-hoc rationalization of the ALJ's decision. The District Court, however, cannot base its decision on such post-hoc rationalizations. *Ann S.*, 2022 WL 204596, at *4 (rejecting defendant's post-hoc rationalization when the ALJ failed to analyze "Plaintiff's fibromyalgia under the criteria of SSR 12-2p"); *see Hernandez v. Soc. Sec. Admin., Comm'r*, 761 F. App'x 901, 904 n.2 (11th Cir. 2019); *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007); *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999); *Edelen v. Astrue*, 711 F. Supp. 2d 1330, 1342 n.12 (N.D Fla. 2010). Rather, a District Court is required to make its decision based solely on the ALJ's findings and whether they are supported by substantial evidence. *Hernandez*, 761 F. App'x at 904 n.2 (citing *Ingram*, 496 F.3d at 1260).

Furthermore, even if the District Court could rely on the Commissioner's post-hoc rationalization, in this case, the Commissioner's rationalization addresses only the second requirement of the 1990 ACR criteria. It still fails to explain the ALJ's basis for determining that Plaintiff's fibromyalgia failed to meet the 2010 ACR criteria. Thus, the post-hac rationalization does not overcome the ALJ's error to address Plaintiff's fibromyalgia.

Because the ALJ failed to articulate her basis for discounting Plaintiff's fibromyalgia as a non-medically determinable impairment, the District Court must remand this case to the Commissioner. On remand, the ALJ should evaluate whether Plaintiff's medical records and her testimony establish that fibromyalgia is a medically determinable impairment and, if it is a medically determinable impairment, to consider the effects of fibromyalgia in conjunction with Plaintiff's other impairments at subsequent steps of the analysis.

**B.    Whether the ALJ Erred in Considering Plaintiff's Bipolar Disorder**

Plaintiff also argues that the ALJ did not consider whether Plaintiff's bipolar disorder was an impairment and, if so, what effect it has on Plaintiff's RFC. Doc. 15 at 25-26.

A medically determinable impairment "must result from . . . psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. Therefore, to establish a medically determinable impairment, a claimant "must provide objective evidence from an acceptable medical source." *Id.* The ALJ cannot rely merely on a plaintiff's "statements of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment." *Id.* Additionally, an ALJ is not required to address every piece of evidence in the record. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("stating that 'there is no rigid requirement that the ALJ specifically refer to

every piece of evidence in his decision'"); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981) ("noting that the ALJ should sufficiently explain the weight given to 'obviously probative' evidence").

Here, Plaintiff's only objective evidence indicating that she had an active diagnosis of bipolar disorder predates the relevant period. During the relevant period, some of Plaintiff's medical records reflect only that she had *a history* of bipolar disorder. Tr. 625, 626, 675. When Plaintiff was hospitalized in 2018, for example, the medical records reflect that medical staff assessed Plaintiff with depression, suicidal thoughts, and poly-drug abuse, not bipolar disorder. Tr. 625, 626. Additionally, during the relevant period—on April 17 and May 17, 2019—Plaintiff sought treatment, including medication and therapy, only for her depression and anxiety, not for bipolar disorder. Tr. 688, 781, 783, 786. In fact, Plaintiff's medical records for this period do not include a single discussion of Plaintiff's history of bipolar disorder. Similarly, Plaintiff's medical records for the relevant period do not include a single diagnosis by a medical professional that Plaintiff suffers from bipolar disorder.

Plaintiff, therefore, did not satisfy her burden of showing that there was objective evidence indicating that Plaintiff was suffering from bipolar disorder or that it was causing her work-related limitations—as opposed to depression, anxiety,

and poly-substance abuse—during the relevant period.[6] The ALJ thoroughly considered the mental health impairments that were found in the relevant, objective medical evidence, *i.e.*, Plaintiff's depression, anxiety, and poly-drug abuse. The ALJ found that these impairments were severe impairments and assessed limitations based on the objective medical record during the relevant period. Tr. 29-33.

Accordingly, Plaintiff failed to show that the ALJ erred in determining that Plaintiff's bipolar disorder was not a medically determinable impairment. *See Ramallo v. Comm'r of Soc. Sec.*, No. 2:19-cv-764-MRM, 2021 WL 960687, at *6 (M.D. Fla. Mar. 15, 2021); *Clowers v. Colvin*, No. C13-0539-RSL, 2013 WL 5835769, at *4 (W.D. Wash. Oct. 30, 2013); *Sesberry v. Astrue*, No. 3:08-cv-989-J-TEM, 2010 WL 653890, at *3-5 (M.D. Fla. Feb. 18, 2010); *Dixon v. Astrue*, No. 5:09-cv-320-RS-EMT, 2010 WL 4942141, at *8 (N.D. Fla. Oct. 26, 2010), *report and recommendation adopted*, 2010 WL 4929045 (N.D. Fla. Nov. 30, 2010). Because substantial evidence supports the ALJ's decision that bipolar disorder was not a medically determinable impairment, this court should not disturb the ALJ's

---

[6] The only objective evidence which indicates that Plaintiff suffered from bipolar disorder predates the period relevant to determining whether she was disabled for purposes of obtaining DIB and SSI. Notably, bipolar disorder can vary "in its severity" and can be punctuated by periods of improvement and relapses and recurrences. *Bauer v. Astrue*, 532 F.3d 606, 607 (7th Cir. 2008). Thus, the fact that Plaintiff may have suffered from bipolar disorder prior to April 2019 does not preclude the ALJ from finding that bipolar disorder was not a medically determinable impairment during the relevant period.

decision that Plaintiff's bipolar disorder was not a medically determinable impairment.

## C.     Plaintiff's Other Arguments

Plaintiff also claims the ALJ erred by discrediting Plaintiff's subjective complaints of pain caused by her chronic back pain, fibromyalgia, and migraines; failing to account for additional limitations caused by fibromyalgia in Plaintiff's RFC; failing to provide a complete hypothetical to the vocational effort to accommodate limitations caused by Plaintiff's pain; and failure to weigh medical opinions relating to fibromyalgia. Doc. 15 at 1-2. Because the undersigned recommends remanding the case for further consideration of Plaintiff's fibromyalgia, the undersigned has not addressed these claimed errors. *Demenech v. Sec'y of the Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (concluding that certain arguments need not be addressed when the case would be remanded on other issues); *Janeda v. Comm'r of Soc. Sec.*, No. 2:16-CV-803-FTM-MRM, 2018 WL 1282313, at *7 (M.D. Fla. Mar. 13, 2018) ("Because the Court finds that on remand, the Commissioner must reevaluate Plaintiff's medical records relating to Plaintiff's fibromyalgia in light of all the evidence of record, the disposition of these remaining issues would, at this time, be premature.").

## VI. Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the District Court:

1. **REVERSE** the Commissioner's decision and **REMAND** this action to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g);

2. Order the Commissioner to conduct proceedings in accordance with this report and recommendation; and

3. Direct the clerk of the court to close the case file.

At Pensacola, Florida, this 12th day of July, 2022.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters.** *See* **N.D. Fla. Loc. R. 72.2;** *see also* **28 U.S.C. § 636(b)(1)(B)-(C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**